UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
KADEEM RAGIN,

                                     Plaintiff,

           -against-

P.O. ROBERTO NAPOLI, (Shield # 9648),
P.O. TONY PEVERARO (Tax I.D. # 959069)
and CITY OF NEW YORK,

                                  Defendants.
-----------------------------------------------------------------------X

(Jury Trial Demanded of all issues)

**COMPLAINT**

CV No.: _____

The Plaintiff KADEEM RAGIN, by his Attorney GARNETT H. SULLIVAN, ESQ., complaining of the Defendants alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a civil rights action in which the plaintiff seeking relief for the defendant's violation and deprivation, under the color of State law of plaintiff's rights secured by the Fourth and Fourteenth amendments of the New York and United States constitutions and under common law and is being brought pursuant to 42 U.S.C. §1983.

2. Plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems just and equitable. A jury trial is demanded

**JURISDICTION**

3. Jurisdiction is based upon and conferred to this Court by 42 U.S.C. §1983 and 28 U.S.C. §§ 1331 and 1343(3) and (4). Plaintiff further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. §1367.

4. Pursuant to 28 U.S.C. §391(b), venue is proper in the Eastern District of New York because the events forming the basis of Plaintiff's complaint occurred in that District.

## PARTIES

5. Plaintiff is a citizen of the United States and a resident of the state of New York.

6. Defendant P.O. ROBERT NAPOLI, open information and belief, at all times hereinafter mentioned, was and still is a citizen of the United States and resident of the state of New York who was employed as a police officer by defendant CITY OF NEW YORK.

7. Defendant P.O. TONY PEVERARO, open information and belief, at all times hereinafter mentioned, was and still is a citizen of the United States and resident of the state of New York who was employed as a police officer by defendant CITY OF NEW YORK.

8. Defendant CITY OF NEW YORK is a municipal corporation organized and existing by virtue of the laws of the State of New York.

## FACTUAL ALLEGATIONS

9. That on or about April 3, 2018 between 11:00 PM and midnight Plaintiff was operating a motor vehicle on Neilson Street in the vicinity of the intersection with Dinsmore Ave. in the County of Queens, City and State of New York.

10. The defendants while acting within the scope of their employment as police officers employed by the defendant CITY OF NEW YORK at the aforementioned time and police stopped the Plaintiff's vehicle.

11. That at the time that the Defendants stopped Plaintiff's vehicle they had no knowledge or information that Plaintiff, who was a young black male, had committed any violation of the vehicular and Traffic Law or any other law whatsoever.

12. The defendants had no legal right to stop Plaintiff's vehicle and such stop was unlawful, unconstitutional and violative of the Fourth Amendment of the United States constitution.

13. That after stopping Plaintiff's vehicle and approaching the vehicle defendants informed Plaintiff that the reason he was stopped was because they saw smoke coming from his vehicle, despite the fact that Plaintiff had not been smoking in the vehicle and such statement was a blatant fabrication of the real reason for the stop of Plaintiffs vehicle by defendants.

14. After unlawfully stopping Plaintiff's vehicle Defendants directed Plaintiff out of the vehicle and conducted a search of Plaintiff's vehicle.

15. Defendants then arrested and detained Plaintiff and charged him with the following violations of law: Vehicular and Traffic Law §375(30), Penal Law §§170.25, 221.10 and 221.05.

16. That by reason of the aforesaid charges The Plaintiff was caused to be arraigned on such charges by a Judge of the Queens County Criminal Court on the night of April 4, 2018 and was released.

17. The Plaintiff was subsequently prosecuted in Queens County Criminal Court due to the unlawful an unconstitutional conduct of the Defendants in stopping Plaintiff's vehicle and subjecting Plaintiff to an unlawful search and seizure.

18. Defendant NAPOLI gave false, misleading and fabricated testimony to a Queens County grand jury including but not limited to testifying that at approximately around midnight he observed Plaintiff driving a vehicle with an air freshener obstructing the vehicle's front windshield view. Defendant NAPOLI also prepared fabricated police reports and signed a fabricated Criminal Complaint and forwarded these fabricated statements to prosecutor.

19. That as a result of the testimony provided by the defendant NAPOLI to the grand jury the Plaintiff was indicted and charged with criminal possession of a forged instrument, second degree (Penal Law §170.25) and unlawful possession of marijuana (Penal Law §221.05).

20. Plaintiff was subsequently prosecuted in Queens County Supreme Court upon the indictment arising from Plaintiff's unlawful arrest until the indictment was dismissed upon the motion of Queens County District Attorney on November 18, 2020.

21. That prior to dismissal of the indictment defendant NAPOLI gave false testimony at a pre-trial suppression hearing on November 6, 2019 in Queens County Supreme Court including but not limited to testifying that he was attracted to Plaintiff's vehicle and stopped it at approximately 11:50 PM because he observed an air freshener hanging from the vehicle's rearview mirror despite the fact that he could not see the driver of the vehicle, and also falsely claimed that he observed marijuana smoke coming from a cup holder in Plaintiff's vehicle.

22. That a judge of the Supreme Court found defendant NAPOLI's testimony to be not credible and that furthermore that even if the defendant's testimony had been found to be credible the stop of Plaintiff's vehicle was unlawful (A copy of the Court's decision is annexed as an exhibit).

## FIRST CLAIM
### (Unlawful Stop, Detention and Search – 42 U.S.C. §1983)

23. Plaintiff repeats, reiterates, and re-alleges each and every allegation of the foregoing paragraphs with the same force and effect as though fully set forth at length herein.

24. That at all times mentioned herein defendants were acting under color of state law.

25. The stop, detention and search of Plaintiff as well as the vehicle he operated violated Plaintiff's Fourth and Fourteenth Amendments of the United States Constitution.

26. The stop of the Plaintiff's vehicle by defendants was without any reasonable suspicion that Plaintiff had violated any Vehicular and Traffic Law or engaged in any criminal conduct.

27. The unlawful stop of Plaintiff by defendants constituted an unlawful detention of Plaintiff and resulted in deprivation of Plaintiff's constitutional right.

28. That said unlawful stop and detention by defendants was the proximate cause of a significant deprivation of Plaintiff's constitutional liberty rights, and Plaintiff was otherwise damaged.

29. Plaintiff was further subjected to a search of his person and of his automobile by defendants without any legal justification.

## SECOND CLAIM
## (42 U.S.C. §1983 – Unlawful Imprisonment)

30. Plaintiff repeats, reiterates, and re-alleges each and every allegation of the foregoing paragraphs with the same force and effect as though fully set forth at length herein.

31. That Plaintiff's arrest by defendants was without probable cause and in violation of the Fourth and Fourteenth Amendments off the United States Constitution.

32. The arrest of Plaintiff by defendants was not in any way privileged and Plaintiff did not consent to his confinement and he was conscious of his confinement.

33. As a direct and proximate result of this unlawful conduct by defendants, Plaintiff has been damaged.

## THIRD CLAIM AGAINST DEFENDANT NAPOLI
## (Fabricated Evidence – Due Process Violation – 42 U.S. C. §1983)

34. Plaintiff repeats, reiterates, and re-alleges each and every allegation of the foregoing paragraphs with the same force and effect as though fully set forth at length herein.

35. Defendant P.O. NAPOLI concocted and fabricated false evidence, created false police reports, signed a false Criminal Court Affidavit under penalty of perjury and made false statements to the prosecutors.

36. Defendant P.O. NAPOLI forwarded such fabricated evidence to the Queens County District Attorney knowing that it was likely to influence a jury to convict Plaintiff.

37. Defendant's conduct violated Plaintiff's constitutional due process rights and subjected Plaintiff to loss of his Liberty as well as otherwise damaging Plaintiff.

38. There was a favorable termination of the proceedings against Plaintiff.

## FOURTH CLAIM AGAINST DEFENDANT NAPOLI
### (Malicious Prosecution – 42 U.S.C. §1983)

39.     Plaintiff repeats, reiterates, and re-alleges each and every allegation of the foregoing paragraphs with the same force and effect as though fully set forth at length herein.

40.     Defendant P.O. NAPOLI instituted and initiated criminal proceedings against Plaintiff without probable cause.

41.     Plaintiff was forced to submit to such proceedings which continued for years.

42.     The criminal charges which were based on fabricated statements of defendants were made with malice.

43.     The criminal proceedings initiated by defendant P.O. NAPOLI was terminated in Plaintiff's favor.

44.     The malicious prosecution of Plaintiff by defendant constitutes a deprivation of Plaintiffs Fourth Amendment Constitutional rights for which Plaintiff is entitled to compensatory and punitive damages.

## FIFTH CLAIM
### (Conspiracy – 42 U.S.C. §1983)

45.     Plaintiff repeats, reiterates, and re-alleges each and every allegation of the foregoing paragraphs with the same force and effect as though fully set forth at length herein.

46.     Defendants conspired to commit all the aforementioned wrongful and unlawful acts under color of state law including stopping Plaintiff's vehicle unlawfully and concocting and fabricating the reasons for the stop.

47.     That the conspiracy by and between the defendants resulted in the actual deprivation of the following constitutional rights privileges and immunities: (a) Plaintiff was deprived of his Fourth Amendment right to be free of unreasonable seizure of his person (b) Plaintiff was deprived of his Fourteenth Amendment right to Liberty without due process of law.

48.  The aforesaid conspiracy was the proximate cause of damages to the Plaintiff.

## SIXTH CLAIM
### (42 U.S.C. §1983 – Violation of Equal Protection)

49.  Plaintiff repeats, reiterates, and re-alleges each and every allegation of the foregoing paragraphs with the same force and effect as though fully set forth at length herein.

50.  That the decision of defendants to stop Plaintiff was motivated by racially discriminatory animus that constituted racial profiling for driving while black.

51.  The stop of Plaintiff's vehicle by defendants was in accordance with indisputable evidence and statistics of racial profiling in the stop of black male drivers by white police officers.

52.  By reason of the defendants unconstitutionally impermissible conduct under color of state law, Plaintiff was deprived of equal protection of the law in violation of the Fourth and Fourteenth Amendments of the United States Constitution, and Plaintiff was damaged thereby.

## SEVENTH CLAIM
### (Failure to Intervene - 42 U.S.C. §1983)

53.  Plaintiff repeats, reiterates, and re-alleges each and every allegation of the foregoing paragraphs with the same force and effect as though fully set forth at length herein.

54.  Each defendant had a reasonable opportunity to intervene and prevent the unlawful acts done against Plaintiff including the obvious violations of his constitutional rights.

55.  Defendants nevertheless failed to intervene and prevent the violation of Plaintiff's rights resulting in damage to the Plaintiff for which defendants are liable.

## EIGHTH CLAIM

### (Violation of 42 U.S.C. §1983)

56. Plaintiff repeats, reiterates, and re-alleges each and every allegation of the foregoing paragraphs with the same force and effect as though fully set forth at length herein.

57. The defendants acting under color of state law, subjected Plaintiff to the foregoing acts without due process of law in violation of 42 U.S.C. §1983 thereby depriving Plaintiff of his rights, privileges and immunities secured by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution, including, without limitations, deprivation of the following constitutional rights:

    (a) Plaintiff was deprived of his Fourth Amendment constitutional right to be free from unreasonable searches and seizures of his person;

    (b) Plaintiff was deprived of his Fourteenth Amendment right to Liberty without due process of law;

    (c) Plaintiff was deprived of his Fourteenth Amendment right to equal protection of the laws

**WHEREFORE**, Plaintiff having been damaged by all the aforesaid wrongful conduct demands the following relief jointly and severally against the defendants:

    A. Compensatory damages
    B. Punitive damages
    C. Attorney's fees together with costs an interest
    D. Such other and further relief as the Court deems proper

Dated: South Hempstead, New York
       March 24, 2021

/s/ Garnett H. Sullivan
**GARNETT H. SULLIVAN, ESQ.**
**Attorney for Plaintiff KADEEM RAGIN**
1080 Grand Avenue
South Hempstead, NY 11550
(516) 285-1575
garnettsullivan@yahoo.com

SUPREME COURT -- STATE OF NEW YORK
CRIMINAL TERM -- K-17 -- QUEENS COUNTY
125-01 Queens Boulevard, Kew Gardens, New York 11415

P R E S E N T:

### HON. EVELYN L. BRAUN, JUSTICE

-------------------------------------------------------------------:
THE PEOPLE OF THE STATE OF NEW YORK   IND. NO.: 2346/18

    - against-

**KADEEM RAGIN**

            Defendant.
-------------------------------------------------------------------:

MOTION: to suppress physical evidence & statements

DATED: May 7, 2020

The following papers numbered
to submitted in this motion

            Garnett Sullivan, Esq.
            FOR THE MOTION

            Matthew Regan, ADA
            OPPOSED

            Papers
            Numbered

    After a hearing, and for the reasons set forth in the accompanying memorandum decision, the motion to suppress physical evidence and statements is granted.

    See memorandum decision attached hereto.

Dated: May 7, 2020

                                            EB
                                       J.S.C.

**MEMORANDUM**

**SUPREME COURT, QUEENS COUNTY**
**CRIMINAL TERM, PART K-17**
-----------------------------------------------------------:
**THE PEOPLE OF THE STATE OF NEW YORK**      BY: EVELYN L. BRAUN, J.S.C

-against-      DATED: May 7, 2020

**KADEEM RAGIN**      IND. NO.: 2346/18

**Defendant.**
-----------------------------------------------------------:

The defendant is charged with Criminal Possession of a Forged Instrument in the Second Degree and Unlawful Possession of Marihuana. He has moved for an order suppressing physical evidence and statements, claiming that he was subjected to an unlawful search and seizure and that his statements were taken in derogation of his constitutional rights. A hearing to determine the admissibility of this evidence was held. Police Officer Robert Napoli testified on the People's behalf and his credibility will be discussed in the body of the decision.

**FINDINGS OF FACT**

Officer Napoli testified that on April 3, 2018 at approximately 11:50 P.M. he was operating a police vehicle in the vicinity of Dinsmore Avenue and Neilson Street, which he described as a residential neighborhood. He said that as he approached the intersection, he saw someone operating a white truck with an air freshener hanging from its rear view mirror. The officer stated that the truck was approximately two car lengths away from him when he made the observation and that he initiated a stop of the vehicle by activating his lights and siren. The truck stopped "right away" (Suppression Hearing

1

Minutes, pg. 7), and Officer Napoli approached its driver, identified at the hearing as the defendant, who was its sole occupant.

According to Officer Napoli, he smelled a strong odor of marihuana when he approached the truck, and when he looked into the vehicle with his flashlight, he saw smoke coming from its cup holder. He asked the defendant to roll down the window, then asked for his license and registration. Once he saw the smoke, he asked the defendant to step out of the truck. As the defendant emerged from the vehicle, the officer told him that he smelled marihuana and asked if he had any on him. In response, the defendant stated that he had some in his pocket. The officer's weapon was not drawn at this time, nor was the defendant in handcuffs. Officer Napoli then reached into the defendant's pocket and recovered a small quantity of "dry and vegetative" marihuana (*id.*, pg. 10).

After recovering marihuana from the defendant's pocket, Officer Napoli leaned into the truck to recover a lit marihuana cigarette from the cup holder. As he did so, he saw a New York State ID on the floor of the front passenger side of the vehicle. He said that when he first observed the ID, he saw the defendant's photo on it and believed it to be a New York State driver's license. However, when he walked to the rear of the vehicle where the defendant was standing with his partner, Officer Peveraro, he learned that the defendant had provided him with a New York State driver's permit. The officer testified that he then "ran" both the license and permit and learned that the permit was valid but that the license was not. According To Officer Napoli, he noticed some irregularities on the driver's license, which bore the name Kadeem Ragin, such as the fact that the defendant's middle name was missing a letter, that there was a blue line instead of microprinting on the license, and that the font was "much thicker" than it should be.

2

Upon learning that the driver's license was invalid, Officer Napoli asked the defendant about it. In response, the defendant said that someone had found it and had given it to him.

Officer Napoli further testified that he asked the defendant if he could drive the truck back to the defendant's home. The defendant agreed, at which time the officer drove the vehicle around the corner, parked it, and gave the car keys to a family member.

On cross-examination, Officer Napoli testified that he did not see who was in the vehicle until he approached it. However, he said that he was able to see the air freshener through the front passenger side window. He described the air freshener as a "normal size cut-out of…a small tree [hanging from] the rear view mirror" (*id.*, pg. 35) and stated that it was black. Upon being shown a different air freshener by defense counsel during cross-examination, he agreed that it was approximately the same size as the one in defendant's vehicle. For the record, the Court estimated the size of the demonstrative evidence to be approximately 3½- 4 inches long by 1½-2 inches wide. Officer Napoli stated that he had no other reason for stopping the defendant's car other than his observation of the air freshener. He testified that he did not stop all cars that had air fresheners hanging from their rear view mirrors, but did stop some of them, indicating that if it was a very busy night he would not make such a stop. He said that if nothing else was going on, he would stop any car he saw with an air freshener hanging from its rear view mirror.

Officer Napoli further testified on cross-examination that it was a violation to have an air freshener hanging from a rear view mirror and that anything hanging from this

3

mirror, regardless of size, could be a violation. The officer did not initially indicate that the air freshener obstructed the driver's view, but when pressed by the Court as to whether it did so, he testified that it could. However, he acknowledged that at no point did he make a determination as to whether the item actually did obstruct the driver's view.

According to Officer Napoli, it was not his practice to give everyone a ticket for having an air freshener hanging from a rear view mirror, but that whether or not he did so depended upon the way the driver behaved with him.

On re-direct examination, Officer Napoli testified that he initially believed that the document on the floor was a license because the defendant's photo was on it.

The defendant now moves for the suppression of physical evidence and statements.

## CONCLUSIONS OF LAW

The primary issue before the Court is the lawfulness of the police stop of the defendant's vehicle. It is settled law that a police officer may stop a vehicle "when he has probable cause to believe that the driver of the vehicle has committed a traffic infraction" (*People v Bookman*, 131 AD2d 1258 [2d Dept 2015], *affirmed* 28 NY3d 967 [2016]), so the question in this case is whether Officer Napoli's testimony regarding his observation of an air freshener hanging from the rear view mirror of the defendant's vehicle established probable cause to believe that the defendant committed a traffic infraction.

Preliminarily, the Court does not credit Officer Napoli's testimony that prior to the stop he was able to observe at 11:50 P.M. a black, 2" x 4" air freshener hanging from the rear view mirror of defendant's vehicle from his vantage point two car lengths away. No

testimony was adduced to indicate that the interior of the vehicle was illuminated by its own light or by any other means.

Since this alleged observation was the only basis for the car stop, the stop cannot be sustained. Accordingly, the evidence derived from the stop, including the marihuana recovered from the vehicle and from the defendant's pocket, the forged license recovered from the floor of the vehicle, and the defendant's statements at the scene, must be suppressed as "fruit of the poisonous tree" (*Wong Sun v United States*, 371 US 471 [1963]).

The Court notes that even assuming, *arguendo*, that Officer Napoli did, in fact, observe an air freshener hanging from the defendant's rear view mirror, it finds that this observation did not justify a car stop. In reaching this conclusion, the Court is persuaded by the holding and rationale of the decision in *United States v Shine* (2019 U.S. Dist. LEXIS 78723, adopted by and motion granted by 2019 U.S. Dist. LEXIS 98619). In *Shine*, the officer testified that he observed a 2" x 4" air freshener hanging from a rearview mirror that "appeared to him to be obstructing the driver's view" (*id.*, pg. 4). The officer conceded that the air freshener was a standard size, but stated that VTL §375(30) "prohibits anything that's not factory issued from being hung from the rear view mirror" (*id.*, pg. 6). The District Court disagreed, holding that "not every item suspended from a vehicle's rear view mirror constitutes a violation of VTL §375(30) (*id.*, pg. 9), and that the "plain language of the statute" makes it clear that in order to constitute a violation, the object suspended from the mirror "must be placed in such a manner as to obstruct or interfere with the view of the operator through the windshield, or to prevent him from having a clear and full view of the road and condition of traffic behind such vehicle" (*id.*,

5

pg. 10, citing VTL §375(30). The Court found that in view of the "unremarkable nature of both the air freshener and its placement" on the rear view mirror, there could be no reasonable belief that it obstructed the driver's view, so that there was no basis for a vehicle stop pursuant to VTL §375(30).[1]

In reaching the conclusion that the observation of a single 2" x 4" air freshener hanging from a rear view mirror did not constitute a traffic infraction, the Shine Court distinguished its case from other New York cases that have upheld car stops on VTL §375(30) grounds. For instance, in Matter of Deveines v New York State Department of Motor Vehicles Appeals Board (136 AD3d 1383 [4th Dept 2016]), the Appellate Division found probable cause to stop a vehicle upon a police officer's observation of multiple air fresheners hanging from the rear view mirror of a vehicle operated by the defendant. Similarly, in People v Bookman, supra, the Second Department upheld a VTL §375(30) stop on the basis of the police testimony that he had noticed "several items" hanging from the vehicle's rear view mirror, including a 2" x 5" "ornamental sandal" and a 2" x 3" necklace.

In the opinion of the Court, the facts in Shine are virtually on point with those in the case at bar. As in Shine, the vehicle in this case had only one standard-sized and "unremarkable" air freshener hanging from its rear view mirror, and the Court agrees with the holding in Shine that this does not constitute a traffic infraction in that it cannot be reasonably found that a single 2" x 4" air freshener suspended from a rear view mirror would obstruct or interfere with the driver's view. It bears noting that the officers effecting

---

[1] The Court noted that even if the officer "mistakenly believed" that the air freshener posed an obstruction, that mistake "would not undermine" the car stop as long as such belief was reasonable, (id., pg. 10) which the Court found on the facts of the case, it was not.

the car stops in both *Shine* and in the case at bar mistakenly believed that anything hanging from a rear view mirror, irrespective of its size or ability to obstruct the driver's view or operation of the vehicle, constituted a violation of the Vehicle and Traffic Law. It appears clear to the Court that to the extent that Officer Napoli even saw the air freshener prior to the car stop, his sole basis for the stop was the fact that the item was hanging from the rear view mirror, not reasonable belief that the item created an obstruction. In fact, the officer did not even consider whether the air freshener obstructed the driver's view, which is the determining factor for a VTL §375(30) car stop$^2$. Accordingly, under the circumstances of this case, the car stop would have been improper even if Officer Napoli had seen the air freshener, thus requiring the suppression of physical evidence and statements as "fruit of the poisonous tree" (*Wong Sun v United States, supra*).

Based upon the foregoing, the defendant's motion to suppress physical evidence and statements is granted.

This shall constitute the decision and order of the Court.

Dated: May 7, 2020

EB
_____
J.S.C.

---

[2] Additional support for holding that a VTL §375(30) violation requires a reasonable belief that the driver's view is obstructed, not merely that an object is hanging from the rearview mirror, may be found in *People v O'Hare* (73 AD3d 812 [2d Dept 2010]).